LAW OFFICES OF STEPHENSON, ACQUISTO & COLMAN, INC.
JOY STEPHENSON-LAWS, ESQ.  (SBN 113755)
RICHARD A. LOVICH, ESQ.  (SBN 11347)
DAVID F. MASTAN, ESQ. (SBN 152109)
VENETIA BYARS, ESQ. (SBN 325741)
vbyars@sacfirm.com
303 N. Glenoaks Blvd., Suite 700
Burbank, CA 91502
Telephone:   (818) 559-4477
Facsimile:   (818) 559-5484

Attorneys for Plaintiff,
STANFORD HEALTH CARE, a non-profit public benefit California corporation

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STANFORD HEALTH CARE, a non-profit public benefit California corporation,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>CAREFIRST OF MARYLAND, INC., doing business as CAREFIRST BLUECROSS BLUESHIELD; and DOES 5 THROUGH 25, inclusive,<br><br>　　　　　　Defendants. | Case No.: 5:22-CV-06041<br><br>SECOND AMENDED COMPLAINT FOR DAMAGES FOR:<br><br>1.　　BREACH OF IMPLIED-IN-FACT CONTRACT |

# SECOND AMENDED COMPLAINT FOR DAMAGES

# PARTIES

1. Plaintiff STANFORD HEALTH CARE ("Stanford") is a non-profit public benefit corporation organized and existing pursuant to the laws of the State of California. Stanford has its principal place of business in the community of Palo Alto, County of Santa Clara, State of California. Stanford provides medical care to patients.

2. Defendant CAREFIRST OF MARYLAND, INC. ("CareFirst Maryland") is a nonprofit organization that does business in Maryland and is organized and existing pursuant to the laws of the State of Maryland. CareFirst Maryland has its principal place of business in the City of Baltimore, County of Baltimore, State of Maryland. CareFirst Maryland arranges for the provision of health care services to its enrollees and/or pays for or reimburses part or all of the costs for those services. CareFirst Maryland is the owner of CareFirst BCBS.

3. Defendant CAREFIRST BLUECROSS BLUESHIELD ("CareFirst BCBS") is a nonprofit organization that does business in Maryland and is organized and existing pursuant to the laws of the State of Maryland. CareFirst BCBS has its principal place of business in the City of Baltimore, County of Baltimore, State of Maryland. CareFirst BCBS arranges for the provision of health care services to its enrollees and/or pays for or reimburses part or all of the costs for those services. CareFirst BCBS is owned by CareFirst Maryland.

4. Defendant CAREFIRST BLUE CHOICE, INC. ("CareFirst Blue Choice") is a nonprofit organization that does business in Maryland, West

1  Virginia and D.C. and is organized and existing pursuant to the laws of the District
2  of Columbia. CareFirst Blue Choice has its principal place of business in the
3  District of Columbia. CareFirst Blue Choice arranges for the provision of health
4  care services to its enrollees and/or pays for or reimburses part or all of the costs
5  for those services.

7       5.    Defendant GROUP HOSPITALIZATION AND MEDICAL
8  SERVICES, INC. ("GHMS") is a nonprofit organization that does business in
9  Maryland and is organized and existing pursuant to the laws of the District of
10 Columbia. GHMS has its principal place of business in the District of Columbia.
11 GHMS arranges for the provision of health care services to its enrollees and/or
12 pays for or reimburses part or all of the costs for those services.

14      6.    Stanford is unaware of the true names and capacities, whether
15 corporate, associate, individual, partnership or otherwise of defendants Does 5
16 through 25, inclusive, and therefore sues such defendants by such fictitious names.
17 Stanford will seek leave of the Court to amend this complaint to allege their true
18 names and capacities when ascertained.

20      7.    Defendant CareFirst Maryland, CareFirst BCBS, CareFirst Blue
21 Choice and GHMS and Does 5 through 25, inclusive, shall be collectively referred
22 to as "Defendants."

24      8.    Defendants CareFirst Maryland, CareFirst BCBS, CareFirst
25 Blue Choice and GHMS and each of them, at all relevant times, have transacted
26 business in the State of Maryland.

28      9.    Stanford is informed, believes, and thereon alleges that at all

1  relevant times, each of the defendants, including the defendants named "Doe" were
2  and are the agent, employee, employer, joint venturer, representative, alter ego,
3  subsidiary, and/or partner of one or more of the other defendants, and were, in
4  performing the acts complained of herein, acting within the scope of such agency,
5  employment, joint venture, or partnership authority, and/or are in some other way
6  responsible for the acts of one or more of the other defendants.

## COMMON FACTUAL BACKGROUND

10.     Stanford is informed and believes and thereon alleges that, at all relevant times, a written contract (the "Contract"), effective May 1, 2003, existed between Stanford and California Physicians' Services, Inc., d.b.a. Blue Shield of California ("BSC")– a non-party in this action.  The Contract obligated Stanford to medically treat individuals who were certain beneficiaries of non-BSC health plans.  Specifically, the Contract obligated Stanford to medically treat individuals belonging to health plans financed, sponsored, and/or administered by member companies belonging to the Blue Cross Blue Shield National Accounts Program, of which Defendants are such members.

11.     Although Defendants were not a signatory to the Contract, the Contract nonetheless bound Stanford to treat Defendants' beneficiaries.  The Contract also obligated Stanford to accept as payment, in full, monies received from Blue Cross Blue Shield National Accounts Program members (such as Defendants) that were made at the discounted rates found within the Contract

12.     Stanford is informed and believes and thereon alleges that, at all relevant times, the patients identified on the spreadsheet attached as **Exhibit A** to this complaint (and which is incorporated here by this reference as though set forth

1  in full) (collectively, the "Patients") were members of a health plan sponsored,
2  administered, and/or financed by Defendants.

4        13.    On the dates of service listed on **Exhibit A** (the "Dates of
5  Service"), Stanford rendered medically necessary services, supplies, and/or
6  equipment to the Patients.

8        14.    Stanford is informed and believes and thereon alleges
9  Defendants is financially responsible for the medically necessary services,
10 supplies, and/or equipment rendered to the Patients on the Dates of Service.

12       15.    Stanford's usual and customary charges for the medically
13 necessary services, supplies, and/or equipment rendered to the Patients for the
14 Dates of Service amounted to $149,944.18.

16       16.    Stanford timely and properly submitted the bills containing said
17 charges for the medically necessary services, supplies, and/or equipment rendered
18 to the Patients to BSC, which was the local plan, for payment by Defendants who
19 were the "home" plans of the various Patients' whose claims are at issue..

21       17.    Rather than properly paying Stanford for the medically
22 necessary services, supplies, and/or equipment Stanford rendered to the Patients,
23 Defendants only paid $6,218.97.

## FIRST CAUSE OF ACTION

(Breach of Implied-in-Fact Contract)

(Against Defendants and Does 5 through 25, inclusive)

18. Stanford incorporates by reference and re-alleges paragraphs 1 through 17 here as though set forth in full.

19. At all relevant times, the Contract between Stanford and BSC bound Stanford to treat beneficiaries not only of health plans financed, sponsored, and/or administered by BSC, but also beneficiaries of health plans financed, sponsored, and/or administered by member companies of the Blue Cross Blue Shield National Programs. Defendants are such member companies. Thus, even though Defendants never signed the Contract nor is obligated under the Contract, Stanford must, nevertheless, medically treat Defendants members and accept payment, in full, from such member companies, with the payment received conforming to the rates found within the Contract.

20. In order to take advantage of such medical treatment and discounted rates on behalf of its members/beneficiaries, Defendants needed only to issue a "Blue Card" program identification card. The members/beneficiaries could then present their "Blue Card" program identification card to Stanford at admission, which signaled to Stanford that it must medically treat such patient pursuant to the terms of the Contract and must accept payments at the discounted rates found in the Contract even though Defendants was not a signatory to the Contract. Otherwise, Stanford would be in violation of its duties owed to BSC.

21. In this way — by conduct alone and with no express agreement between them — an implied-in-fact contract arose between Stanford and

30425                                              - 6 -         SECOND AMENDED COMPLAINT FOR BREACH
                                                                          OF IMPLIED-IN-FACT CONTRACT

Defendants each time one of the Patients presented to Stanford their "Blue Card" program identification card and/or otherwise identified themself as being a member/beneficiary of a health plan financed, sponsored, and/or administered by a member company of the Blue Cross Blue Shield National Program.

22. Each of the Patients specified in Exhibit A presented a "Blue Card" program identification card issued by Defendants and/or otherwise identified themself as belonging to a health plan financed, sponsored, and/or administered by Defendants at the time of their hospital stay at Stanford during the dates of service listed on Exhibit A.

23. Accordingly, each time one of the Patients sought medical treatment at Stanford and so identified themself, an implied-in-fact contract arose in which Stanford agreed to render to that Patients all medically necessary services, supplies, and/or equipment needed by that individual and secondarily agreed to accept as payment, in full, monies received from Defendants that were in conformance with the discounted rates found in the Contract. In return, Defendants agreed to pay for such care at the appropriate discounted rate regarding such care.

24. Stanford's usual and customary charges for rendering the medically necessary services, supplies, and/or equipment to the Patients set forth in Exhibit A, amounted to $149,944.18. At the rates found within the Contract, Defendants should have paid an aggregate amount of $48,974.52. However, Defendants paid only $6,218.97, leaving a deficit of $42,755.55, which amounted to a breach of its implied-in-fact contract with Stanford.

25. No express written contract between Defendants and Stanford

existed to prescribe payment for the medically necessary services, supplies, and/or equipment rendered to Patients, but Stanford did not perform those services gratuitously. Rather, Defendants knew and understood that Stanford rendered such treatment with the expectation of being paid the discounted rates under the Contract and through the Blue Card program.

26. Prior to the treatment rendered by Stanford, through industry custom and practice, Defendants impliedly agreed and understood that Stanford would render medically necessary care to Defendants beneficiaries, submit bills for such care to Defendants, and that Defendants would pay the discounted rates under the contract to Stanford for the necessary medical treatment rendered to Patients, rather than the Patients themselves (except for co-payments, deductibles, and co-insurance amounts, if any).

27. At no time did Defendants represent that they would not pay the discounted rates under the Contract to Stanford for necessary medical treatment rendered to Patients.

28. For Patient 1 on Exhibit A, Defendants did not object to the rate or expected reimbursement communicated to them for Patient's treatment. Instead, Defendant paid at the appropriate Contract rate but denied that a separate payment was due for parts of the treatment under the Contract. These actions by Defendants show they acknowledgement of the Contract and paying under those rates. Only now do they dispute that obligation and duty.

29. By treating Patients as it was required to do under applicable law, and initiating contact with Defendants to verify eligibility and seek authorization as described above, Stanford and Defendants entered into an implied-

in-fact contract through both industry custom and practice, as well as prior and on-going course of conduct between Stanford and Defendants vis-à-vis the "Blue Card" program. Industry custom and practice and prior course of conduct included, among other things:

      a)     Defendants' issuance of a "Blue Card" identification card to the Patients;

      b)     Defendants' instructing the Patients to present such identification card to medical providers so as to give assurances to those medical providers that such care would be paid for; and;

      c)     Stanford communicating with Defendants at or near the time of service to ask for authorization for the medical care rendered to patients in good faith, and Defendants acknowledging the Patients' admission to Stanford for such care.

30.     Defendants directly and deliberately benefited from those services by prompting, through its words and prior and ongoing conduct, and through the custom and practice in the healthcare industry, that Stanford would perform those services on the Patients who were beneficiaries of Defendants, thus fulfilling Defendants' obligation to secure medically necessary healthcare for its beneficiaries. When the Patients received those services, the express insurance coverage agreement made between Defendants and the Patients was satisfied and Defendants was able to retain rightfully the premiums paid on behalf of the Patients to enable the Patients to receive the medical care performed by Stanford. Further, Stanford directly conferred a benefit upon Defendants when it helped Defendants make good on promises Defendants made to its own

members/beneficiaries that it would arrange for them to receive timely medical care, when necessary, at a first-rate medical facility.

31. Stanford provided medically necessary care to Defendants beneficiaries as described above.

32. Stanford properly billed Defendants for the medically necessary services provided to the Patients as listed in Exhibit A.

33. Defendants breached the implied-in-fact contract by paying nothing, resulting in an aggregate underpayment of $42,755.55, of the usual and customary charges for the medical services performed by Stanford.

34. Stanford performed all conditions required on its part to be performed in accordance with the terms and conditions of the implied-in-fact contract.

35. Defendants breached the implied-in-fact contract by failing to pay Stanford for the medically necessary services, supplies and/or equipment rendered or supplied to the Patients.

36. As a direct and proximate result of Defendants' breach of the implied-in-fact contract, Stanford suffered damages in an amount to be proven at trial but not less than the sum of $42,755.55, exclusive of interest.

**PRAYER FOR RELIEF**

**WHEREFORE**, Stanford prays for judgment as follows:

For the First Cause of Action:

    1. for the principal sum of $42,755.55 and for interest on such principal sum at the rate of 15% per annum, pursuant to Cal. Health & Safety Code § 1371; or, in the alternative, for interest on such principal sum at the rate of 10% per annum, pursuant to Cal. Civ. Code § 3289.

    2. for all costs of suit incurred herein; and,

    3. for such other and further relief as the Court deems just and proper.

Dated: 4 March 2024

                                      LAW OFFICES OF STEPHENSON,
                                      ACQUISTO & COLMAN, INC.

*Venetia Byars*

                                            Venetia Byars
                                            Attorney for
                              STANFORD HEALTH CARE, a non-profit
                                public benefit California corporation

# EXHIBIT A

**STANFORD HEALTH CARE v. CAREFIRST OF MARYLAND, INC. dba CAREFIRST BLUECROSS BLUESHIELD**
Exhibit A

| No. | File No | Admission Date | Discharge Date | Total Charges | Total Paid | Underpaid |
|---|---|---|---|---|---|---|
| 1 | 000067377445 | 06/29/2020 | 06/29/2020 | $13,491.00 | $5,947.35 | $1,730.06 |
| 2 | 050000177555 | 12/15/2020 | 12/15/2020 | $136,453.18 | $271.62 | $41,025.49 |
|   |   |   |   | $149,944.18 | $6,218.97 | **$42,755.55** |